# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

| | |
|---|---|
| Ward DEAN and  KumJa DEAN, | ) Case No. 3:05cv29/LAC/MD |
| | ) |
| Plaintiffs, | ) **COMPLAINT for Damages** |
| v. | ) **and Declaratory Relief** |
| | ) |
| ESCAMBIA COUNTY Commissioners, | ) Civil Rights Action |
| in their official capacities, | ) |
| James H. MARTIN, Charles E. WALKER, | ) 42 U.S.C. § 1983 |
| G. Thomas SMITH, Janet LANDER, | ) |
| Michael GODWIN, Steve McCANN, | ) |
| Shannon RENAUD, Paul HYBART, | ) JURY TRIAL REQUESTED |
| James E. HOWES, Howard CHUNN, | ) |
| Lloyd BRYAN, Keith WILKINS, and | ) |
| DOES I – XX all in their official capacities | ) |
| and individually; and Robert GAINES, | ) |
| individually, | ) |
| Defendants. | ) |
| | ) |



OFFICE OF CLERK
U.S. DISTRICT CT.
NORTHERN DIST. FLA.
PENSACOLA, FLA.

2005 JAN 31  PM 1: 29



FILED

Plaintiffs Ward Dean, M.D. and KumJa Dean, sue Defendants and allege as follows:

## JURISDICTION AND VENUE

1.     This action arises under the Fifth, Ninth, and Fourteenth Amendments of the United States Constitution, Title 42 of the United States Code, §§1983 and 1985; and under Title 42 of the United States Code, § 1988, Plaintiffs are entitled to attorneys' fees to vindicate the deprivations and violations of their constitutional rights by Defendants.

2.     The Court has jurisdiction of this cause under 28 U.S.C. § 1331, which confers jurisdiction of matters arising under the Constitution and laws of the United States; 28 U.S.C. § 1343; and 28 U.S.C. §§ 2201 & 2202, which authorize any court of the United States to declare the rights and other legal relations of any interested party seeking such declaration, and to grant such necessary or proper relief based on a declaratory judgment or decree.

3.     All acts alleged herein transpired within the Northern District of the State of Florida; therefore, venue is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

<u>Plaintiffs</u>:

4.     Plaintiff **Ward Dean**, M.D., is a natural individual residing in the state of Florida, County of Escambia.

5.     Plaintiff **Kumja Dean** is a natural individual residing in the state of Florida, County of Escambia.

2

<u>Defendants</u> (upon information and belief):

6.      Defendant **Escambia County** is now, and at all times material hereto, was a County located in Florida, and is organized and existing under and by virtue of the laws of the State of Florida.

7.      Defendant **Robert Gaines** is now, and at all times material hereto was, a neighbor of plaintiffs who, under color state law and in active concert with other state actors improperly lodged a complaint against plaintiffs, and is a resident of Escambia County, Florida.

8.      Defendant **James H. Martin** at all times material hereto was, employed by Escambia County as a Code Enforcement Officer and is a resident of Santa Rosa County, Florida.

9.      Defendant **Charles E. Walker** is now, and at all times material hereto was, employed by Escambia County and is a resident of Escambia County, Florida.

10.     Defendant **G. Thomas Smith** is now, and at all times material hereto was, acting under colorable authority of Escambia County, Florida and is a resident of Escambia County, Florida.

11.     Defendant **Janet Lander** is now, and at all times material hereto was, employed by Escambia County as a County Attorney and is a resident of Escambia County, Florida.

12.     Defendant **Michael Godwin** is now, and at all times material hereto was, employed by Escambia County as a County Attorney and is a resident of Escambia County, Florida.

13.     Defendant **Steve McCann** is now, and at all times material hereto

3

was, employed by Escambia County Sheriff's Dept. and is a resident of Escambia County, Florida.

14.     Defendant **Shannon Renaud** is now, and at all times material hereto was, employed by Escambia County Sheriff's Dept. and is a resident of Escambia County, Florida.

15.     Defendant **Paul Hybart**, is now, and at all times material hereto was, employed by the Escambia County Dept. of Solid Waste Management and is a resident of Escambia County, Florida.

16.     Defendant **James E. Howes**, is now, and at all times material hereto was, employed by the Escambia County Dept. of Solid Waste Management and is a resident of Escambia County, Florida.

17.     Defendant **Howard Chunn**, is now, and at all times material hereto was, employed by the Escambia County Dept. of Solid Waste Management and is a resident of Escambia County, Florida.

18.     Defendant **Lloyd Bryan** is now, and at all times material hereto was, employed by the Escambia County Dept. of Solid Waste Management and is a resident of Escambia County, Florida.

19.     Defendant **Keith Wilkins** is now, and at all times material hereto was, employed by the Escambia County Neighborhood & Environmental Services Dept. and is a resident of Escambia County, Florida.

20.     Defendants DOES I-XX are now, and at all times material hereto were, employed by Escambia County and are residents of Escambia County, Florida.

21.     Each and all of the acts of Defendants were done by Defendants, and each of them, as individuals and under the color and pretense of the ordinances,

4

regulations, customs, policy, and usages of Escambia County, and under the color of the authority of their respective offices.

## BACKGROUND

22.  In December, 1999, Plaintiffs erected a six-foot high decorative wrought iron fence in their front yard (located entirely on Plaintiff's property, not encroaching upon the county's right-of-way).

23.  On an unknown date, Defendant Robert Gaines lodged a complaint (orally or in writing) with unknown county government officials against plaintiffs concerning their fence located on private property.

24.  On June 6th, 2000, Defendant Escambia County Code Enforcement Officer Martin cited Plaintiffs for allegedly violating Escambia County Land Development Code (LDC) Sections 2.02.00 (failure to obtain permit) and 7.04.00 (violating the maximum four-foot height for such a fence).

25.  On August 25th, 2000, a hearing was held in the Deans' case before Defendant Special Master G. Thomas Smith, at which the Deans vigorously contested the County's charges, on a variety of issues.

26.  On October 3rd, 2000, the Special Master issued, and later amended on October 16th, 2000, an Order finding the Deans guilty of these violations.

27.  On October 25th, 2000, the Deans filed a Notice of Appeal of the Special Master's decision in the Escambia County Circuit Court. On June 7th, 2002, the Circuit Court affirmed the decision of the Special Master. The Deans requested reconsideration of that Order, which also was denied on July 9th, 2002. Following that denial, the Deans filed a Petition for Writ of Certiorari in the First District

Court of Appeal on July 29, 2002.

28. On December, 23, 2002, Defendants Godwin and Lander confidently notified the Board of County Commissioners that "The case will be final thirty days after the entry of the Court of Appeal Order. At that time, the County will be able to abate the violations found by the Special Master." Plaintiff's filed an Appeal against the Appellate Court's decision on that same day.

29. Prophetically, on 27 December, 2002, the Court of Appeal issued yet another opinion-absent "Per Curiam" Order and Mandate, Denying Plaintiffs' claims; and on January 16th, 2003, Plaintiffs' Motion for Rehearing was denied.

30. On April 1st, 2003, Plaintiff Ward Dean was aroused from his work by his barking dogs. He went outside to investigate and found two (2) Escambia County Deputy Sheriffs (Defendants Steve McCann and Shannon Renaud), Escambia County Department of Solid Waste Management employees Lloyd Bryan and Paul Hybart, an animal control officer with an electric prod, Code Enforcement Officer James Martin, and a truckload of inmates from the Escambia County Jail. (Defendants Chunn, Howes, and Wilkins also had various yet-to-be-determined supervisory/administrative roles without whose approval these actions would not have occurred.)

31. Code Enforcement Officer Martin announced that he was there to tear down the six foot wrought iron fence around Plaintiffs' front yard.

32. Plaintiff Dean put Defendants McCann, Renaud, Bryan, and Martin on notice that they were engaged in illegal conduct, were trespassing on his property, and would be held accountable.

33. The defendants then started cutting the fence to the ground with

6

blowtorches.

## COUNT I

### Denial of Procedural Due Process of Law

34.     On an unknown date, Defendant Robert Gaines contacted unknown persons within the county government, and complained about the Deans' fence. Gaines conspired with the unknown county officials under color state/county statutes/ordinances by fabricating a violation of those laws.

35.  On June 6, 2000, Defendant James Martin filed a Notice of Violation charging plaintiffs with violating Sections 2.02.00 and 7.04.00 of the Escambia County Land Development Code (LDC), which Martin knew, or should have known, did not apply to plaintiffs and/or was unconstitutional on its face.

36.  Charles E. Walker then wrote a letter to Plaintiff's, alleging that they had violated "State Statute(s)/Escambia County Ordinance(s) No. 96-3."

37.  The letter also stated that the plaintiffs committed a "Land Development Code (L.D.C.) Violation:  A. Remove 6' fence from front yard; B. Abate."

38.     Plaintiff Ward Dean responded to the correspondence of Defendants Walker and Martin  by letter dated July 13, 2000, pointing out that "Florida Statute 588.01, Requirements of general fences, requires that "All fences ... shall be ... not less than 5 feet." [emphasis added]

39.     Plaintiff Ward Dean also stated in his letter that he believed there was a conflict between the State statute (FS 588.01) and the County ordinance (LDC 7.04.00) governing fences.

40.     On or about July 28, 2000, Defendant James Martin sent a Petition

for Hearing Before the Office of Code Enforcement Special Master, County of Escambia, State of Florida, stating that plaintiffs had violated Escambia County Ordinance 96-3.

41.     On or about July 31, 2000, Defendant G. Thomas Smith sent the plaintiffs a Notice of Code Enforcement Special Master Hearing Subpoena to Alleged Violator to Appear at the Said Hearing.

42.     Upon receiving the subpoena, the plaintiffs called the code enforcement office and asked what law covered the Special Master's office and the proceedings of the above-referenced hearing.

43.     On August 2, 2000, in response to the inquiry from plaintiffs, the code enforcement office faxed plaintiffs a copy of County Ordinance 97-60 as the authorization for the Special Master's office and for the jurisdiction of Case No. 99-12-0196.

44.     In a letter of August 11, 2000, Plaintiff Ward Dean responded to the Subpoena of Special Master G. Thomas Smith and asked Defendant Walker why they were not following procedures to "initiate a Special Master Hearing ... specified in ... Section 5.1 of County Ordinance of 97-60."

45.     Plaintiffs' letter to Defendant Walker further inquired why the Plaintiffs had not received a list of three Special Masters to choose from, as required by county ordinance 97.60 § 6.2, in order to allow objections to any Special Masters on the list.  This letter was not answered by Defendant Walker.

46.  On or about August 11, 2000, the Deans sent another letter to Defendant Walker, stating that ¶15 (b) of S. 70.51 (referenced in Ordinance 97-60) required that "the Special Master must provide notice of the place, date, and time

of the hearing to all parties ... at least 40 days."

47.  The subpoena received from Defendant Smith provided only fifteen (15) days notice – not the minimum forty (40) days of the above-referenced statutes.  This letter was also not answered by Defendant Walker.

48.  During the hearing held on 6 August, 2000, Defendant Smith answered "yes" in response to Plaintiff Ward Dean's question, "Do you have an oath of office on file with regard to your job?"

49.  In response to another query by the plaintiffs, Defendant Smith said, "[he] was employed by the county or [he] was contracted by the county four years ago to undertake the responsibility to be a Special Master."

50.  Plaintiff Ward Dean questioned Defendant Smith about the specific statutes under which the hearing was to proceed, in order to clear up the confusion between the manner in which the hearing was conducted, and the statutes cited by the code enforcement office in response to Plaintiff's inquiry. Defendant Smith declined to respond.

51.  After initially refusing the plaintiffs' request for the statutes that governed the hearing, Defendant Smith first told the plaintiffs they needed to look in Chapter 160 of the Florida Statutes. Then after a brief pause, Defendant Smith told the plaintiffs that they needed to look instead at Chapter 162 of the Florida Statutes and Escambia County Ordinance 95-9 for the authority as to the performance of the Special Masters' duties.

52.  Later in the proceeding, in response to the plaintiffs' question about issuing subpoenas, Defendant Smith cited two Escambia County Ordinances (95-7 and 97-9) as the authority for the Special Master to issue subpoenas.

9

53. Plaintiff Dean also pointed out that the county fence ordinance is in conflict with Florida Statute 588.01; and that <u>Moorman v. Department of Community Affairs</u>, 626 So. 2d 1108 (Fla. 3rd DCA 1993) held that property owners have a constitutional right to fence their property unless there is a statute narrowly tailored to achieve the state's objective of protecting an endangered species.

54. After the above-referenced hearing, Defendant Smith issued an order on or about the 3rd day of October, 2000, finding in favor of Escambia County and against the plaintiffs.

55. Defendant Smith issued an Amended Order on or about October 16, 2000, finding that the plaintiffs had violated "Section 7.04.00, Escambia County Land Development Code, Ordinance 96-3, as well as the failure to obtain a permit to construct the fence."

56. Defendant Smith's Amended Order also changed the pertinent part of paragraph five of the original order to read, "Under authority of §§ 162.09 (1), F. S. (1995) and Sec. 30.34 (d) of the Code of Ordinances" instead of "[u]nder authority of §§ 162.09 (1), F. S. (1995) and Sec. 108.5-8 (e) of the Code of Ordinances."

57. The change made to the Amended Order in paragraph five regarding Sec. 108.5-8 (e) of the Code of Ordinances as authority for actions to be taken by the County was due to the fact that plaintiffs pointed out that Sec. 108.5-8 (e) <u>does not exist</u>.

58. Defendant Godwin explained that the discrepancies between the Order and Amended Order of October 16, 2000, was that Defendant Smith's use

10

of Sec. 108.5-8 (e) in the Order was a "typographical error."

59.     On or about October 25, 2000, plaintiffs filed their Notice of Appeal in the Escambia County Circuit Court, Escambia County, Florida, as Defendant Smith directed the plaintiffs to do in the order issued on October 6, 2000.

60.     On December 7, 2000, plaintiffs wrote to the office of Code Enforcement requesting a copy of Special Master Smith's oath of office, his contract with the county, and other information about the Special Master, which would confirm Defendant Smith's statements during the hearing of August 15, 2000, that he had taken the said oath and was under contract to the county.

61.     On or about December 15, 2000, in response to the plaintiffs' inquiries about Special Masters, and in particular, Defendant Smith, Michael Godwin responded by enclosing a copy Mr. Smith's contract as a *Rezoning Hearing Examiner* for Escambia County—but <u>not</u> as a Code Enforcement Special Master.

62.     On or about December 19, 2000, Pat Cotton sent plaintiffs an e-mail explaining that she had researched the "Board Minutes" and found that a contract with Mr. Smith [as a Special Master] was entered into for a two (2) year period on January 23, 1996, and that the contract had <u>not been renewed</u>.

63.     In the e-mail identified in paragraph 62, above, Ms. Cotton stated that, "[they] do not have an Oath of Office for Mr. Smith because one is not required according to our Assistant County Attorney Janet Lander."

64. Ms. Cotton provided the minutes of the Escambia County Commissioners to the plaintiffs, which showed that the special masters were serving "pursuant to Ordinance Number 95-9, as well as a copy of defendant

Smith's [expired] contract as a Code Enforcement Special Master."

65. Defendant Smith's contract as a Code Enforcement Special Master was signed for a two-year period beginning on January 23, 1996.

66. The plaintiffs inquired of Defendant Godwin in a letter of December 26, 2000, of the lawful authority of Defendant Smith to act as a Code Enforcement Special Master.

67. The plaintiffs also sent a letter to Defendant Janet Lander on December 26, 2000, seeking further explanations as to the comments made by Pat Cotton about the oath of office of Defendant Smith, as required by Florida Statute 92.50 and the bonding requirements.

68. On or about December 28, 2000, responding to plaintiffs' letter of December 26, Defendant Lander sent a letter to plaintiffs in which she stated that although the "position of Special Master for Code Enforcement is an office ... [t]here is nothing in Article II, §§ 5(b), Fla. Const., that requires the execution and filing of an oath ... therefore [Lander] would not expect that there be a signed oath on file in this regard."

69. By letter of January 27, 2001, Plaintiff Ward Dean wrote Defendant Godwin that: "This is a follow-up to my letter of 26 December, 2000, in which I asked what lawful authority Mr. G. Thomas Smith has had to act for the County as a Code Enforcement Special Master, in view of the fact that his contract expired two years ago? I would appreciate an answer."

70. Defendant Godwin responded by letter stating as follows: "In response to your letter of January 27, 2001, Special Master G. Thomas Smith is acting under and pursuant to the authority and qualifications set out in Section

12

30-32 of the Escambia Code of Ordinances as a designated Special Master of the Board of County Commissioners."

71.     In the letter identified in paragraph 70 above, Defendant Godwin also stated: "As such, Mr. Smith is compensated for his services by the County as authorized in Section 30-32. I am informed by the Purchasing Manager that since Mr. Smith's contract expired in 1998, he was paid in fiscal years 1997 -1999 by Direct Payment Voucher for which there is no competitive purchasing function and the using department makes a request for payment directly to Accounts Payable without processing the transaction throughout the Office of Purchasing."

72.   The contract of G. Thomas Smith required the Board of County Commissioners to give written notice to Defendant Smith of any changes in the Agreement between ESCAMBIA COUNTY and G. THOMAS SMITH, ESQUIRE Serving as a Code Enforcement Special Master.

73.   Said written notice, in paragraph 72, to Defendant Smith was required to be sent by registered United States Mail with a return receipt requested, and addressed to the party for whom it was intended.

74.     Defendant Smith was under the legal obligation, if he desired to make any changes in the Master Agreement, to notify the Board of County Commissioners, by registered United States Mail, with return receipt requested. Why is this even in here? Smith didn't make the changes, the County did.

75.     The Board of County Commissioners never produced any evidence that any of the parties complied with the terms of ¶ 6.4.of the Master Agreement

76.     Defendant G. Thomas Smith has continuously been acting as a

13

Special Master without any agreement since January 23, 1998, rendering his acts and orders ultra vires and void. This is the custom and practice of the Board of County Commissioners, Janet Lander, and Michael Godwin.

77.     By reason of the above conduct of defendants, individually and collectively, plaintiffs have been deprived of procedural due process of law.

## COUNT II

### Denial of Substantive Due Process of Law – Arbitrary Conduct

78.     The allegations contained in paragraphs 1 through 77 of this Complaint are realleged and incorporated herein by reference as if set forth verbatim.

79.     The conduct of defendants, and each of them, was done knowing that their acts were *ultra vires* and void.

80.     The above conduct of the defendants, and each of them, was arbitrary and capricious and deprived Plaintiffs of substantive due process of law.

## COUNT III

### Denial of Substantive Due Process of Law and Damages

81.     The allegations contained in paragraphs 1 through 80 of this Complaint are realleged and incorporated herein by reference as if set forth verbatim.

82.     During March 2003, Escambia County sent plaintiffs a notice that their fence must be in compliance with the County Ordinance within seventeen (17) days, notwithstanding the fact that said Ordinance did not apply to the Plaintiffs and/or was unconstitutional on its face.

14

83.    On April 1st, 2003, agents of the County, acting without authority, willfully and maliciously destroyed Plaintiff's fence.

84.    The wrought iron fence cost approximately $12,000 to construct.

85.    The conduct of defendants, individually and collectively resulted in the destruction of the Plaintiffs' private property.

86.    The conduct of the defendants, individually and collectively deprived plaintiffs of substantive due process of law.


## COUNT IV

### Denial of Due Process of Law by Conspiracy

87.    The allegations contained in paragraphs 1 through 86 of this Complaint are realleged and incorporated herein by reference as if set forth verbatim.

88.    Defendants, individually and collectively, knew at the time of their above stated conduct, that the County Ordinance was unconstitutional on its face.

89.    All Defendants (with the possible exceptions of Defendants Gaines, Hybart, Howes, Chunn, and Wilkins) had been placed on notice that the Ordinance, assuming arguendo the Ordinance is facially constitutional, was unconstitutionally applied against plaintiffs, because it does not apply to a wrought iron fence.

90.    Defendants, individually and collectively, knew at the time of their above stated conduct that, assuming arguendo the facial/as applied constitutionality of the Ordinance, it should not have been taken to the ground,

15

because the Ordinance permits fences four (4) feet tall.

91.     Defendants, individually and collectively damaged plaintiffs.

92.     In doing the acts and things above stated, the Defendants were conspirators which resulted in: (1) deprivation of plaintiffs' right to procedural due process of law, (2) denial of Plaintiffs' right to substantive due process of law, (3) deprivation of equal protection under the law, and (4) trespass and destruction of private property.

93.     Each and every act of the defendants described in this Complaint were overt acts done in furtherance of the deprivations stated.

## COUNT V

### Denial of Due Process by Violations of the Separation of Powers Doctrine

94.     The allegations contained in paragraphs 1 through 93 of this Complaint are realleged and incorporated herein by reference as if set forth verbatim.

95.     The scheme established for Escambia County's Code Enforcement mechanism violates the separation of powers doctrine in numerous aspects, including, but not by way of limiting, (a) by permitting limited appeals rather than a full appeal; (b) the administrative process infringes on the constitutional courts' jurisdiction; (c) the Special Master's jurisdiction is essentially equal to the constitutional courts' jurisdiction; (d) the administrative process is mandatory for most parties, which removes a whole class of cases from the jurisdiction of the constitutional courts; (e) the Special Masters are given powers inherently belonging to the constitutional courts; (f) the Special Master's decisions are given the same weight and authority as constitutional court decisions; and (g) the act

16

creating the administrative court is unconstitutional, especially on the grounds that it established an unauthorized court and delegates to an administrative agency excessive judicial powers.

96.    Escambia County's Code Enforcement mechanism is funded, at least in part, by the civil penalties it collects. Such system unconstitutionally bypasses the Florida State Legislature and violates the separation of powers doctrine.

### Jury Trial

97.    Plaintiffs request trial by jury on all issues at law and equity.

### Damages

98.    The acts, conduct, and behavior of defendants, and each of them, caused damages in excess of $12,000.

99.    The acts, conduct, and behavior of defendants, individually and collectively, were performed knowingly, intentionally, and maliciously, by reason of which plaintiffs are entitled to an award of punitive damages in excess of $1,000,000.00.

**WHEREFORE**, Plaintiffs pray for judgment:

1.    That the Court determine and declare that Escambia County's Land Development Code Section 7.04.00 is unconstitutional facially and/or as applied;

2.    That this Court determine and declare that the complete destruction of the subject fence by leveling same to the ground was unlawful;

3.    That this Court determine and declare that the Code Enforcement mechanism for Escambia County violates the separation of powers doctrine;

4.    That this Court determine and declare that Special Master G. Thomas Smith acted without lawful authority in this case;

5.     Award plaintiffs damages in excess of $12,000;

6.     Award plaintiffs punitive damages in the amount in excess of $1,000,000.00;

7.     Award Plaintiffs their costs herein and reasonable attorneys fees pursuant to 42 U.S.C. § 1988;

8.     Grant plaintiffs such other and further relief as may be just and appropriate.

Respectfully submitted this 31st day of January, 2005.


Ward Dean, M.D.
Pro Se
8799 Burning Tree Road
Pensacola, Florida 32514
Telephone:  (850) 484-0595


KumJa Dean
Pro Se
8799 Burning Tree Road
Pensacola, Florida 32514
Telephone:  (850) 484-0595

18