IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


WARD DEAN, M.D. and,
KUMJA DEAN
            Plaintiffs,

vs.                                                         No.   3:05cv29/LAC/MD

ESCAMBIA COUNTY, et. al,
            Defendants.

_____

### ORDER and REPORT AND RECOMMENDATION

Before the court are two motions to dismiss, a motion for summary judgment, and a motion for Rule 11 sanctions.  The first motion to dismiss (doc. 6) was filed by defendant Robert Gaines, who contends: (1) that this action is untimely; (2) that the complaint does not show that he is or was a state actor, nor can it, and he therefore cannot be subject to liability under 42 U.S.C. § 1983; and (3) that the action is barred by *res judicata*.  Plaintiffs have responded (doc. 21), and as permitted by the court Mr. Gaines has replied (doc. 33).

The second motion to dismiss pursuant to Rule 12(b)(1) and (6) (doc. 10) was filed by defendants the Escambia County Commissioners and county employees James H. Martin, Charles E. Walker, Janet Lander, Michael Godwin, Paul Hybart, James E. Howes, Howard Chunn, Lloyd Bryan and Keith Williams, and G. Thomas Smith, Esq., (hereafter county defendants, and, where appropriate, Special Master Smith), who contend: (1) that this court lacks jurisdiction under the *Rooker-Feldman* doctrine, discussed below; (2) that county employees Bryan, Hybart, Martin, Chunn,

Howes and Wilkins and Special Master Smith are entitled to absolute quasi-judicial immunity; (3) that all county defendants and Special Master Smith are entitled to a qualified immunity defense; (4) that the action is untimely as to the county commissioners, county employees Ladner and Godwin, and Special Master Smith; (5) that plaintiffs have failed to allege a claim for relief based on a procedural due process federal constitutional violation; (6) that plaintiffs have failed to allege a claim for relief based on a substantive due process federal constitutional violation; (7) that plaintiffs have failed to state a claim for relief for conspiracy under 42 U.S.C. § 1985; (8) that plaintiffs have failed to state a claim for relief for a violation of the separation of powers doctrine; (9) that *respondeat superior* cannot impose liability on an official capacity defendant under 42 U.S.C. § 1983; and, (10) that plaintiffs have failed to state a claim for relief for punitive damages against any defendant. Plaintiffs responded.  (Doc. 29).

Defendants Steve McCann and Shannon Renaud (now Eddins) have moved for Fed. R. Civ. P. Rule 56 summary judgment (doc. 21).  Plaintiffs have conceded with respect to Ms. Renaud, move to dismiss her as a party defendant, and ask the court to defer ruling on Mr. McCann's motion for summary judgment until discovery can be had (doc. 30).  An order in that regard has been entered (doc. 35).

Finally, Mr. Gaines has requested Rule 11 sanctions (doc. 24).  Plaintiffs have not responded in opposition to this motion.  They will have that opportunity at the appropriate time.

Plaintiffs frame this case as an original action brought pursuant to 42 U.S.C. § 1983 (violation of federal rights under color of state law), 42 U.S.C. § 1985 (conspiracy to violate federal rights), and 42 U.S.C. § 1988 (providing for sanctions and attorneys fees under the foregoing causes of action).  They say that their federal constitutional rights were abridged by the actions of all defendants, who unlawfully conspired and acted to destroy a fence on plaintiffs' property, and they seek damages.  It is not necessary to address the various claims and defenses raised, nor

to rule specifically on all grounds of the motions to dismiss or the motion for summary judgment.  This court lacks subject matter jurisdiction over the claims raised here.


## Jurisdiction of the United States District Court

A federal court "must be sure of its own jurisdiction before getting to the merits," *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831, 119 S.Ct. 2295, 2307, 144 L.Ed.2d 715 (1999), and is obligated to raise questions concerning subject matter jurisdiction *sua sponte* in all cases, even where none, or only some, of the defendants have raised the issue.  *See, e.g., Arthur v. Haley*, 248 F.3d 1302, 1303 n. 1 (11th Cir. 2001) ("While neither party has raised the issue of whether we have subject matter jurisdiction over this case, we are obliged to address the issue *sua sponte*.").  Attacks on subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) come in two forms: "facial attacks" and "factual attacks." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). Facial attacks on the complaint "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d at 1529 (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980), *cert. denied*, 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980)) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977)). "'Factual attacks,' on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" *Garcia v. Copenhaver, Bell, & Assoc.*, 104 F.3d 1256, 1260-61 (11th Cir. 1997).  The parties have provided the court with various documents, including an appendix to the county defendants' motion to dismiss.  The appendix contains relevant pleadings from the state courts (doc. 10, app.).  Plaintiffs have also filed some documents (doc. 13).

The county defendants and Special Master Smith raised the issue of subject matter jurisdiction and briefed it, and plaintiffs have presented their arguments in opposition (doc. 29, pp. 17-22). Both refer to the documents described above, and neither party has objected to their authenticity. The question is therefore at issue, and court will treat the county employees' and Special Master Smith's motion as a Rule 12(b)(1) challenge to subject matter jurisdiction, and *sua sponte* consider this court's jurisdiction over plaintiffs' claims against the other defendants as well.

As noted above, plaintiffs invoke this court's jurisdiction under federal civil rights laws based on alleged constitutional deprivations by state actors, and on an alleged conspiracy to deprive plaintiffs of federal constitutional protections. Regardless of how plaintiffs characterize their complaint, however, this is not an original proceeding. As will be shown below, plaintiffs really complain that their constitutional rights were violated by county administrative proceedings and by the courts of the State of Florida, and they seek review of those courts' rulings.

The following relevant facts are set out in the complaint:[1]

1. Plaintiffs own a home in Escambia County, Florida, and in front of their home they erected a wrought iron fence.

2. Their neighbor, defendant Robert Gaines, who was at material times an officer or board member of the homeowners' association to which plaintiffs' property belonged, complained to county authorities about the fence, and, plaintiffs allege, in spite of knowing that there was no legal basis for doing so, conspired with those authorities to have the fence removed.

3. The action undertaken by the county, through its defendant commissioners and employees, involved bringing an administrative

---

[1] Because the issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case--the trial court is free to weigh the evidence and satisfy itself as to the existence of that power. "In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528 (11th Cir. 1990) (internal quotations and citations omitted). The court accepts plaintiffs' factual allegations as true for purposes of outlining the background of the case. However, resolution of this case turns on the law and on the procedures in the state courts. The court is not required to accept plaintiffs' legal conclusions.

action before a special master, defendant Thomas Smith, a local attorney.  Mr. Smith had once been appointed by the county as a special master, but his contract had not been renewed, and he had not sworn the oath appropriate to the exercise of his position.  Mr. Smith heard the case nevertheless, and ordered that the fence be removed.

4.      Mr. Smith's order was affirmed by the Circuit Court of Escambia County, Florida, and the Florida First District Court of Appeal denied certiorari, both times without written opinion.

5.      The fence was then removed by county employees, with the assistance of an Escambia County Sheriff's Deputy, defendant McCann.

In substance, plaintiffs contend that (1) Mr. Gaines unlawfully conspired with the county to violate plaintiffs' constitutional rights, (2) the county joined the unlawful conspiracy, and furthered it by requiring a hearing before a tribunal that acted without authority or lacked jurisdiction and by then enforcing that tribunal's unlawful order, (3) the ordinance that the county sought to enforce against the plaintiffs was unconstitutional on its face and as applied, and (4) local law enforcement joined in the conspiracy by assisting in the removal of the fence.

A district court does not have appellate jurisdiction over state court judgments.  The *Rooker-Feldman* doctrine instructs that only the Supreme Court of the United States has that  jurisdiction.  The doctrine evolved from two decisions of the Supreme Court:  *Rooker v. Fidelity Trust Co*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).  In *Rooker,* the plaintiffs sought to have a federal district court "declare[ ] null and void" an adverse judgment of a state court.  263 U.S. at 414, 44 S.Ct. at 149.  Plaintiffs claimed that the judgment against them was rendered and affirmed "in contravention of the contract clause of the Constitution of the United States . . . and the due process of law and equal protection clauses of the Fourteenth Amendment . . . in that it gave effect to a state statute alleged to be in conflict with those clauses and did not give effect to a prior decision in the same cause by the Supreme Court of the State which is alleged to have become the 'law

of the case.'"  263 U.S. at 415, 44 S.Ct. at 150.  The Court affirmed dismissal of the case by the district court for lack of jurisdiction, reasoning that only the Supreme Court has jurisdiction to entertain an appeal from a state court:

> If the constitutional questions stated in the bill actually arose in the cause, it was the province and duty of the state courts to decide them; and their decision, whether right or wrong, was an exercise of jurisdiction.  If the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding.  Unless and until so modified, it would be an effective and conclusive adjudication. . . .  Under the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse or modify the judgment for errors of that character. . . .  To do so would be an exercise of appellate jurisdiction.  The jurisdiction possessed by the District Courts is strictly original.

263 U.S. at 415-416, 44 S.Ct. at 150.

In *Feldman*, *supra*, the plaintiffs sued the District of Columbia Court of Appeals, contending that it had denied their petitions for admission to the bar of that court in violation of their federal constitutional rights.  The Supreme Court approved the district court's dismissal of the action, reasoning that the suit against the District of Columbia Court of Appeals (which is treated as a state court) was in effect an appeal of that court's decision, and that only the Supreme Court had jurisdiction to entertain such an appeal.

Although the *Rooker-Feldman* doctrine has not been widely applied, and although there has been some confusion concerning when it should be applied, its proper application was very recently clarified.  In its current term the Supreme Court said: "The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp,* __ U.S. __, 125 S.Ct. 1517, 1521-22, __ L.Ed.2d __ (2005) (holding that the doctrine did not apply

because the federal suit was filed before the state court judgments were rendered).

Relevant to this case, "[i]f the decision of a state agency has been upheld by a state court, then the *Rooker-Feldman* doctrine applies, because a challenge to the agency's decision necessarily involves a challenge to the judgment of the state court." *Narey v. Dean*, 32 F.3d 1521, 1525 (11th Cir. 1994) (holding that the doctrine does not apply to a state agency decision that has not been reviewed by a state court). "Federal courts are without jurisdiction to 'decide federal issues that are inextricably intertwined' with a state court's judgment." *Id., quoting Leidel v. Juvenile Court of Madison County*, 891 F.2d 1542, 1545 (11th Cir. 1990). *See, also Staley v. Ledbetter*, 837 F.2d 1016 (11th Cir. 1988) (holding that a district court lacked jurisdiction to review a decision of a county agency, where the decision had been upheld by the state court of appeals). The Seventh Circuit noted that it had previously applied *Rooker-Feldman* where "the plaintiffs' injury stemmed from the state court judgment -- an erroneous judgment, perhaps, entered after procedures said to be unconstitutional, but a judgment nonetheless." *Gash Associates v. Village of Rosemont, Ill.*, 995 F.2d 726, 728 (7th Cir. 1993) (citing *Ritter v. Ross*, 992 F.2d 750 (7th Cir. 1993). *Gash Associates* was cited approvingly by the Eleventh Circuit in *Narey, supra*, 32 F.3d at 1525. As will be shown below, the *Rooker-Feldman* doctrine applies to this case, because the issues raised here have already been adjudicated by Florida courts.[2]

Plaintiffs clearly meet the test for the application of *Rooker-Feldman* as clarified by the Supreme Court in *Exxon Mobil*. The first prong of the *Exxon Mobil* test asks whether plaintiffs are state court losers. The county brought an administrative proceeding against the plaintiffs, and the plaintiffs lost. Plaintiffs

---

[2] The court notes that while their appeal from Special Master Smith's decision was pending, plaintiffs filed suit in the Circuit Court of Escambia County against the primary parties here, raising essentially the same claims. The court dismissed without prejudice, inviting plaintiffs to amend their complaint once the appeal was concluded. Plaintiffs did not do so (doc. 10, exhs. 9, 10), clearly because the result of the appeal would have had preclusive effect. Although this has no direct bearing on the instant case, it illustrates what plaintiffs are trying to do here - appeal a state court decision to a federal district court - because they could not do so successfully in state court.

appealed to the appropriate state court and lost again.  They then sought certiorari at the next state court level and lost again.  Plaintiffs are very clearly state court losers.  The second prong asks whether plaintiffs are complaining of injuries caused by state court judgments.  Plaintiffs tell this court that what happened to them at the administrative level and in the state courts was in contravention of their due process and other constitutional rights.[3]  The third prong asks whether the state court proceeding was terminated before the federal action was filed.  That question is answered affirmatively, because the Florida First DCA's mandate was issued on December 27, 2002 (doc. 10, exh 16), and the instant suit was not filed until January 31, 2005.  The fourth prong asks whether plaintiffs are inviting district court review and rejection of the state court judgments.  That question is also answered in the affirmative.  Specifically, plaintiffs seek damages based on the defendants' alleged constitutional violations, and they admit that "[i]n the instant matter, *plaintiffs are challenging the entire state process as unconstitutional, and they are challenging the purported judgments as void.*"  (Doc. 29, p. 18) (emphasis added).

In order to prevail here - that is, in order to recover monetary damages for violation of their constitutional rights - plaintiffs must show that their constitutional rights were violated.  To show that Mr. Gaines, the county defendants, Special Master Smith, or Deputy McCann conspired to violate their constitutional rights, violated their constitutional rights, or applied a statute or regulation that was unconstitutional on its face or as applied, plaintiffs would have to show that those defendants' various activities were in fact unconstitutional.  The only way to accomplish that would be to have the state court judgment declared void.  And the only avenue available for plaintiffs to do that would be to seek certiorari in the Supreme Court of the United States.

---

[3] Plaintiffs attempt to convince the court that this is an independent action against individuals, but as will be shown below, every unlawful or unconstitutional act allegedly committed by these defendants has been upheld by the state courts.

Plaintiffs attempt to except this case from the *Rooker-Feldman* doctrine. They agree that if a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction (doc. 29, p. 17). Plaintiffs then contend that "[i]f, on the other hand, a federal plaintiff asserts as a legal wrong an illegal act or omission by an adverse party, *Rooker-Feldman* does not apply." (*Id*.). Plaintiffs say that because they are suing individuals, not the state courts, it somehow makes a difference. Plaintiffs do not offer support for this contention, nor is there any. Sections 1983 and 1985 do not create independent causes of action, but impose liability only for violations of federal rights. *Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979). Plaintiffs' claims under § 1983 (violation of constitutional rights under color of state law) and § 1985 (conspiracy to commit constitutional violations) therefore succeed or fail on plaintiffs' ability to show that their constitutional rights were violated. In effect plaintiffs here attempt to bootstrap their loss in the state courts into a federal claim by accusing individuals of violating constitutional rights that the state court did not find to have been violated.

Plaintiffs argue that this court should not dismiss on jurisdictional grounds because they did not or could not have raised their federal constitutional claims in the state court - that a state proceeding is not one "in which a federal constitutional claim can be asserted." (Doc. 30, p. 22). Plaintiffs offer no meaningful support for this proposition. The cases they cite, *Miller v. Hartwood Apartments*, 689 F.2d 1239 (5th Cir. 1982), *Kilgoar v. Colbert County Board of Education*, 578 F.2d 1033 (1978) and *Crowe v. Leeke*, 550 F.2d 184 (4th Cir. 1977) are not on point. *Miller* held that a federal constitutional claim could not have been raised below because the Unlawful Entry and Detainer Court had limited jurisdiction, and because, unlike here, no appeal was taken from that court's judgment. *Kilgoar* and *Crowe* involved *res*

*judicata* questions where a federal constitutional claim had not been raised in the state court.

That is not the case here, because plaintiffs did raise what they claimed were federal constitutional claims in the state courts.  Their specific grounds on appeal in that court were:

1. The charges brought against the appellants and procedures followed were so vague that their right to due process was violated.

2. There is a conflict between the state statutes and the local ordinance [making the local ordinance unconstitutional].  (Bracketed language taken from plaintiffs' argument in their reply brief.)

3. The special master did not have lawful authority to conduct a hearing in this case.

4. The acts of the Appellees violated the Deans' constitutionally guaranteed private property rights and their right to be free from government intrusion.

(Doc. 13, exhs. 4, 5).  A Florida circuit court, when reviewing an administrative agency decision on appeal, applies a three part standard of review: (1) to determine whether procedural due process was afforded, (2) to determine whether the essential requirements of law were met, and (3) to determine whether the administrative findings and judgment are supported by substantial competent evidence.  *City of Deerfield Beach v. Valliant*, 419 So.2d 624, 626 (Fla. 1995).  That includes the authority to consider state and federal constitutional issues.  *State v. Horner*, 168 So.2d 137 (Fla. 1964). The circuit court affirmed the special master's order, finding no constitutional infirmities.

Plaintiffs then sought certiorari in the First District Court of Appeal of Florida, presenting the following grounds for relief:

A. The lower court failed to determine whether Escambia LDC section 7.04 regulates wrought iron fences, and thus is inapplicable to appellants.

B.    The lower court failed to apply the compelling state interest test to whether Escambia County LDC section denies appellants equal protection of the laws.

C.    The lower court erred in holding that the special master had lawful authority to conduct a hearing since the special master had not fulfilled the requirements of law prior to exercising the authority of his office.

D.    The lower court erred in failing to find Escambia County Land Development Code section 7.04 (Ordinance 93-6) unconstitutional in that it conflicts with Florida Statute 588.01.

E.    The lower court erred in failing to apply the compelling state interest test to the Escambia Ordinance which deprives appellees of the right to protect their property under the Florida Constitution.

F.    The lower court erred in failing to apply the compelling state interest test for appellants' right to privacy.

G.    Appellants' substantial (sic) and procedural due process rights were violated under the 14th Amendment of the United States Constitution and Section 9 of the Florida State Constitution.

(Doc. 13, exh. 13).  A Florida appellate court entertaining a petition for certiorari from a circuit court applies a two part standard of review: (1) whether the circuit court afforded procedural due process, and (2) whether the circuit court applied the correct law.  *Plymel v. Moore*, 770 So.2d 242, 246 (Fla. 1st DCA 2000) (citations omitted).  This includes consideration of both state and federal constitutional claims. The appellate court declined to grant certiorari.

Plaintiffs also contend that the issue of Special Master Smith's jurisdiction or authority was not considered in the state courts because they were not able to "prove" that Special Master Smith lacked jurisdiction or was without authority until after his order was entered.  They argue that they could not raise such a claim until after his decision was rendered, but plaintiffs' complaint here shows that they did, specifically by questioning the special master's oath before the hearing (doc. 1, ¶ 48).  After the special master's order and amended order were entered, plaintiffs

obtained what they considered proof that the special master was without authority to act  (doc. 1, ¶¶ 61-62, 65, 70-76), and presented this and other state or federal constitutional issues in their appeal to the circuit court.  Special Master Smith's lack of jurisdiction - the lack of power even to hear a case - could be be raised as a defense at any time, including on appeal.  Fla.R.Civ.P. 1.140(b) & (h)(2) ("The defense of lack of jurisdiction of the subject matter may be raised at any time.")  Plaintiffs presented the jurisdictional issue to the Circuit Court, which affirmed.  A challenge to the authority of a particular judge can be waived for failure to raise it, *Fidelity Brokerage Services v. Cook*, 572 So.2d 6 (Fla. 4th DCA 1991), but plaintiffs here questioned Special Master Smith's authority almost from the beginning, even questioning his failure to take an oath before the hearing was held (doc. 1, ¶ 53).  The issue was then raised specifically in the circuit court and in the district court of appeal.

The fact that the circuit court did not issue an opinion explaining its decision affords plaintiffs no relief.  "The word 'affirmed' [ ] used [in disposing of a case] necessarily means that the appellate court has carefully examined all points raised by all appealing parties and found them to be without merit."  *South Florida Hospital Corp. v. McCrea*, 110 So.2d 25, 31 (Fla. 1960).  Plaintiffs' argument that they either did not, or could not, raise their federal constitutional claims in the state courts, and that the state courts did not rule on such claims, therefore fails.  Moreover, there was another avenue of attack available to them.  They could have sought prohibition in the state court to prevent Special Master Smith from acting.  *English v. McCrary*, 348 So.2d 293, 296 (Fla. 1977) ("Prohibition is an extraordinary writ, a prerogative writ, extremely narrow in scope and operation, by which a superior court, having appellate and supervisory jurisdiction over an inferior court or tribunal possessing judicial or quasi-judicial power, may prevent such inferior court or tribunal from exceeding jurisdiction or usurping jurisdiction over matters not within its

jurisdiction.").[4]  They did not do so.  To say that they were prevented from raising constitutional issues in the state courts is legally and factually incorrect.

Purely State Law Issues.

Finally, even if plaintiffs were prevented from raising federal constitutional claims in the state court, *Rooker-Feldman* still applies, because all of plaintiffs' current claims are grounded in state law, and there were no federal claims that could have been raised.  In discussing this issue, the court does not directly address the closely interrelated questions raised by the county defendants' and Mr. Smith's argument that plaintiff has failed to state a claim for which relief can be granted, because it is not necessary to reach that issue.  However, the same reasoning would support granting the motion.

It is well settled that § 1983 imposes liability only for violations of rights protected by the Constitution and laws of the United States.  *Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979); *Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002) ("Section 1983 does not create a remedy for every wrong committed under the color of state law, but only for those that deprive a plaintiff of a federal right.").  Therefore, mere allegations of state law infractions are insufficient to support a §1983 claim.  *J.H. ex rel. Higgin v. Johnson*, 346 F.3d 788, 793 (7th Cir. 2003) ("[A] violation of state law--even assuming one occurred in this case--does not per se make a state actor liable under § 1983.  State law violations do not form the basis for imposing § 1983 liability.") (citing *White v. Olig*, 56 F.3d 817, 820 (7th Cir. 1995)), *cert. denied*, 541 U.S. 975, 124 S.Ct. 1891, 158 L.Ed.2d 470 (2004); *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990).  In many cases the same conduct will violate both state law and the federal Constitution, but not all violations of state law rise to the level of a deprivation of a right guaranteed by the Constitution

---

[4]  Plaintiffs say they could not have raised this issue because they had no proof of Special Master Smith's lack of jurisdiction until after his order was issued.  While it my be true that they had no actual proof, they obviously knew there was a potential jurisdictional problem because they raised it directly to the special master.  Nothing prevented them from seeking prohibition at that time and finding their proofs before a hearing on the petition.  Discovery in a civil case, after all, is designed to serve that function.

or federal law.  *See  Street v. Surdyka*, 492 F.2d 368, 371 (4th Cir. 1974) (citing *Ouzts v. Maryland National Insurance Co.*, 470 F.2d 790 (9th Cir. 1972)).  An alleged violation of a state statute does not give rise to a corresponding §1983 violation, unless the right encompassed in the state statute is guaranteed under the United States Constitution.  *Moore v. The Marketplace Restaurant, Inc*. 754 F.2d 1336, 1349 (7th Cir. 1985) (citing *Moore v. Kusper*, 465 F.2d 256, 258 (7th Cir. 1972) and *Street v. Surdyka*, 492 F.2d at 372-73); *Clark v. Link*, 855 F.2d 156, 161-63 (4th Cir. 1988) (same). Ignoring for sake of argument the preclusive effect of the state court decisions, the essential inquiry in this case, therefore, is not whether defendants violated Florida law by misapplying a Florida statute, or by allowing a special master unqualified by Florida law to act, but rather whether these acts deprived plaintiffs of a federal right. If defendants did violate Florida law, they still cannot be liable under § 1983 unless they also violated federal constitutional law.  *See Street v. Surdyka*, 492 F.2d at 370-71.

Plaintiffs cannot show a federal deprivation on any of the five counts they have pleaded in this court:

Count I - In their first count plaintiffs allege denial of procedural due process due to fabrication of a violation of state laws, lack of authority of the special master, and conflict between the local ordinance and a state statute.  The fact that the special master's decision that the fence needed to be removed was upheld by the state courts indicates that neither the special master nor the court found a fabrication of state law violations.  Whether a special master has taken an oath is not a matter of federal constitutional import.  Plaintiffs have not presented any authority for their implied proposition that there is a federal constitutional requirement that a special master take an oath, nor has the court found any.  That is purely a matter for the state to determine.  Whether a judge is acting within his or her jurisdiction arises in § 1983 cases when a judge pleads judicial immunity, but the existence of the judge's jurisdiction in those cases is determined based on state, not federal, law.

See *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972) (Claim that regulations of California Department of Alcoholic Beverage Control exceed the constitutional authority of the Department as matter of state law was not cognizable in suit brought under 42 U.S.C. § 1983), *disavowed on other grounds*, *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996); *Shields v. Hopper*, 519 F.2d 1131, 1132 (5th Cir. 1975) (Allegation that prisoner's work assignment amounted to classification error under state law did not state cause of action for violation of prisoner's civil rights.)  Plaintiffs argued this issue in the state courts at length, and lost.  That can only mean that the state courts found either that the special master <u>did</u> take an oath, or under the circumstances that <u>state law did not require him to.</u>  The state courts also necessarily found that the local ordinance applied, and that it did not conflict with the statute.  It is not for this court to say whether these findings are correct under state law.  The defendants here could not have fabricated a violation of state law because, according to state court decisions there was no state law violation, much less a federal one; the plaintiffs were found to have violated a local ordinance.  Therefore defendants could not have violated plaintiffs' constitutional rights.

Count II - In their second count plaintiffs claim denial of substantive due process because the defendants knew their acts were unlawful.  The Florida courts did not find that the defendants' acts were unlawful.  The only basis upon which plaintiffs rest this claim is the interpretation and applicability of state law.  Whether the state courts were correct in the interpretation of state law is not a matter for this court.  *Roberts v. Arledge*, 519 F.2d 1129 (5th Cir. 1975) ("Whether school district officials correctly interpreted and applied Mississippi law does not raise any federal issue cognizable under § 1983.").  There cannot be a federal violation in light of the state court's implicit finding that defendants' actions were not unlawful.

Count III - In their third count plaintiffs allege denial of substantive due process because the local ordinance did not apply to plaintiffs and was

unconstitutional by reason of its conflict with a state statute.  As with Count II, the applicability and constitutionality of the local ordinance (as it related to an allegedly contradictory state statute) is purely a matter of state law interpretation.  Because it was found not to conflict, there is no federal violation.

Count IV - In their fourth count plaintiffs allege that the defendants conspired to deny them due process by applying a local ordinance that was not applicable to plaintiffs' fence and was unconstitutional by reason of its conflict with a state statute.  Again, since the state courts found that state law was not violated there could be no wrongful conspiracy to violate a federal right.

Count V - In their fifth count plaintiffs allege denial of due process by violation of the separation of powers doctrine.  They contend that the county commission, as a legislative body, could not lawfully create a judicial office, that of special master, without offending the separation of powers doctrine.  How the state of Florida defines the limits and boundaries of its political subdivisions, its legislative bodies, and its courts, does not raise a federal constitutional issue.  That is for the Florida courts to decide. Although plaintiffs cite numerous cases in which courts have found separation of powers violations, all but one are state court decisions dealing with state issues (doc. 29, pp.35-36).  The one federal case cited, *Northern Pipeline Constr. Co. v. Marathon Pipeline Co.*, 468 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), dealt with the appointment of United States Bankruptcy Judges as violative of Article III of the United States Constitution, a purely federal matter.  That has no relevance to a § 1983/1985 action.  Plaintiffs' arguments concerning the interplay of powers and jurisdictions in Florida raise no federal claims and do not afford this court jurisdiction.

Plaintiffs disagree with the findings of the special master and the state courts, but "[i]f the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding." *Rooker*, 263 U.S. at 415-416, 44 S.Ct. at 150.  The appropriate appellate

proceeding is not in this court.  Plaintiffs here are "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 125 S.Ct. at 1521-1522.  To the extent they claim that federal constitutional arguments could not have been made below they fail, because all such claims were made, or could have been made, in the state courts, and in any event, the claims they now raise are grounded on state law only.  Because the claimed violations of federal rights are based solely on claimed misapplication of state law by state courts, plaintiffs would be unable to show any federal constitutional violation even if this court did have subject matter jurisdiction.  This is simply a case of dissatisfied state litigants asking a federal court to hold that state courts misapplied state law.  This court lacks the power to exercise that appellate jurisdiction.  Plaintiffs' relief, if any is to be had, must come from the Supreme Court of the United States.

In light of this conclusion and of the recommendation that follows, it is not necessary to consider the various other grounds for dismissal and for summary judgment raised by Mr. Gaines, the county defendants, Special Master Smith, and Deputy McCann.  These include Mr. Gaines' assertion that he was not a state actor, nor could he have been, that the case is barred by limitations, and *res judicata*; Deputy McCann's assertion that he was not in any way involved other than in providing security; and the county defendants' and Special Master Smith's assertions that they, or some of them, are entitled to dismissal based on quasi-judicial immunity, qualified immunity, statute of limitations, failure to state a claim for which federal relief can be granted, the inapplicability of *respondeat superior*, and punitive damages.  If the district judge rejects the following recommendation, the matter should be referred back to the undersigned for further proceedings.

Accordingly, it is ORDERED that the portion of court's order at doc. 35, which granted plaintiffs time to conduct discovery with respect to defendant McCann, is VACATED.  No discovery shall be had, and no party is required to respond to any pending motion, other than making their objections, if any, to this report and recommendation, until such time as the district judge accepts or rejects it.

Further, it is  respectfully RECOMMENDED that this action be dismissed with prejudice for lack of subject matter jurisdiction.  The court should retain its inherent jurisdiction to consider any subsequent claims for attorney fees or Rule 11 or other sanctions, and this case should be referred back to the undersigned for ruling on the pending Rule 11 motion.

At Pensacola, Florida this 20th day of April, 2005.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).